IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-774-0497 | Case No. 1:15-mj- 58 <br><br> **Filed Under Seal** |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Edward Galloway, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone with assigned number 423-774-0497 (the "Target Cell Phone"), whose service provider is Verizon Wireless, 180 Washington Valley Road, Bedminster, NJ 07921 (hereinafter "Verizon" or "Verizon Wireless"). The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since 1998. I have investigated federal criminal violations related to violent crime, narcotics, public corruption and terrorism. I have received formal training and have participated in search warrants in a variety of investigative matters. As a federal agent, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 875(c), and possibly other federal violations, are in the planning stages and will be committed by Robert Doggart. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of other individuals who may be engaged in the commission of these offenses.

## PROBABLE CAUSE

5. Affiant has learned through the use of confidential informant(s), a review of social media, and other investigative techniques that Robert Doggart has made threats regarding individuals in the state of New York. Affiant believes, based upon a review of available databases, that Doggart lives in Sequatchie County, Tennessee. Through database searches, affiant has learned the address of Doggart and has learned the previous place of employment for Doggart. Affiant believes that Doggart was previously employed at the Tennessee Valley Authority. Furthermore, affiant has learned that Doggart was an unsuccessful candidate for the United States House of Representatives in 2014.

6. In or about February 2015, Doggart attempted to recruit others for an "operation" wherein he and others would attack a "Muslim training camp" in New York. Affiant has become aware that the user of the Target Cell Phone (which is the object of this warrant), Doggart, has engaged in conversation which would involve threatening behavior. Specifically, affiant is aware that Doggart has had communication with a Confidential Informant (hereinafter "CI") in which Doggart has revealed plans to travel from the Eastern District of Tennessee to the State of

2

New York. Affiant has learned that Doggart is a member of an organization known as "American Reapers." American Reapers has a closed Facebook page (posting on, and viewing of, the Facebook page is by invitation only). This Facebook page revealed that the group to which Doggart belongs are "faced with the fight of their lives" and they intend to offer their lives as collateral. The group also intends to inflict "casualties upon the enemies of our nation and world peace." Affiant has listened to consensually recorded phone calls between Doggart and the CI. During these phone calls, Doggart has issued threats. Doggart has contacted the CI regarding plans to travel from Tennessee to New York. Doggart used the Target Cell phone to contact the CI. The purpose of this travel was purportedly to conduct surveillance on a compound in Hancock, New York, which Doggart believes is a "Muslim training camp." Affiant is aware that some of the calls occurred in February and March, 2015.

7. During one of the phone calls, Doggart tells the CI, "those guys [unintelligible] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." Affiant believes that during the unintelligible portion of the recording that Doggart is saying either "those guys <u>ought</u> to be killed" or "those guys <u>have</u> to be killed." Doggart tells the CI that they cannot carry pistols from Tennessee to New York because New York does not have carry permit reciprocity, but they can bring their "AR 15s, M4s or M16s." Doggart informs the CI that he (Doggart) plans on bringing his M4 with four magazines. Doggart then tells the CI he can provide the CI with the "meanest shotgun on earth." When discussing the schedule, Doggart tells the CI that "the drop dead date is April 15 because that's when those guys in OAF say they're gonna start a civil war." Then Doggart says "I don't know if that's true or not, maybe they are." In communications between Doggart and the CI on March 12, 2015, Doggart informed the CI that the surveillance (or "recon") of "Islamberg" in Hancock,

3

New York, was to take place "next week." Doggart told the CI they would meet in Nashville and then drive to New York.

8. Affiant is aware that the CI was located in Texas. Doggart discusses on the recording the CI's location in El Paso, and also discusses the difficulty of traveling from El Paso to New York. Furthermore, affiant believes that Doggart is placing the phone call from the State of Tennessee because Doggart references Tennessee in the calls on more than one occasion. Affiant cannot say with certainty that Doggart was located in the Eastern District of Tennessee during the calls, but given that Doggart's home address is located in the Eastern District of Tennessee, affiant believes there is probable cause to establish that the call occurred in this district.

9. Affiant is aware that most individuals today carry their cellular telephones when traveling. Affiant submits that Doggart uses the Target Cell phone and, based upon information received from fellow agents, that Doggart has contacted the CI using the Target Cell phone. Affiant also believes that Doggart has indicated he will be traveling in the near future. Allowing law enforcement officers to track the movements of the Target Cell phone will aid agents in gathering information regarding the federal crime listed above. Furthermore, affiant submits that probable cause exists to allow tracking of the Target Cell phone for at least the next thirty days as Doggart has developed a plan to travel to New York to conduct surveillance and possibly to inflict harm on others.

10. In affiant's training and experience, affiant has learned that Verizon is a company that provides cellular telephone access to the general public. Affiant also knows that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they

4

provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

11. In affiant's training and experience, affiant has learned that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

12. In affiant's training and experience, affiant has learned that that Verizon can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

13. Based on the foregoing, affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

14. Affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is

5

reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

15. Affiant further requests that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. Affiant also requests that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

16. Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

6

17. Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Edward D. Galloway
Special Agent, FBI


Subscribed and sworn to before me on this 13th day of March, 2015

_____
WILLIAM B. CARTER
UNITED STATES MAGISTRATE JUDGE

7

# ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone with assigned call number 423-774-0497, whose wireless service provider is Verizon Wireless, a company headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).